UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Joseph Yaccarino and Tracy Yaccarino.

                                    Plaintiffs,    CV-03-4527 (CPS)

    - against -                        MEMORANDUM OPINION
                                                         AND ORDER

Motor Coach Industries, Inc. and
Isringhausen, Inc.,

                                    Defendants.

----------------------------------------X

SIFTON, Senior Judge.

    Plaintiffs Joseph Yaccarino ("Yaccarino") and Tracy Yaccarino, husband and wife, bring this action against Defendant Isringhausen, Inc. ("Isringhausen") to recover damages for back injuries Yaccarino suffered from an accident in which a bus operator seat, allegedly made by Isringhausen, became detached from its mounting and threw Yaccarino to the floor while he was driving a municipal bus.[1] Plaintiff Yaccarino alleges claims for negligence and strict liability for product defect. Under the negligence claim, Yaccarino alleges that Isringhausen failed to warn Plaintiffs of the potential dangers of its product, namely

---

[1] Plaintiffs originally commenced this action against Motor Coach Industries, Inc. ("MCI") and Isringhausen on August 11, 2003 in the Supreme Court of New York, Richmond County. On September 11, 2003, MCI removed the action to this Court. On March 31, 2005, as agreed by the parties, the claims against MCI were dismissed without prejudice, leaving Isringhausen as the sole remaining defendant.

the weight limit of the seat.² Tracy Yaccarino also asserts a claim for lack of consortium.

Presently before the Court is Defendant Isringhausen's motion for summary judgment dismissing the complaint pursuant to Federal Rule of Civil Procedure 56.³ For the reasons that follow, Defendant's motion is granted.

## Background

The following facts are drawn from the complaint, Local Rule 56.1 statements, depositions, and affidavits submitted in connection with these motions. Disputes are noted.

During all relevant times, Joseph Yaccarino ("Yaccarino") was employed by the New York City Transit Authority ("NYCTA") as a bus operator. Defendant Isringhausen is a Michigan corporation

---

² Defendant argues that Plaintiffs' failure to warn claim is a new theory of liability not alleged in the complaint, and that the failure to warn claim must therefore be dismissed, apparently because it is not stated as a separate claim for relief. *See* Defendant's Reply Memorandum of Law in Support of Defendant Isringhausen Inc.'s Motion for Summary Judgment, pp. 1, 3, 6. Here however, Plaintiffs alleged the failure to warn theory in the Amended Complaint as one aspect of the negligence claim, an accepted practice in this Circuit. *See, e.g., Medtronic, Inc. v. Lohr*, 518 U.S. 470, 481 (1996) (considering negligence count based on breach of duty of care and failure to warn of product's potential hazards); *Liriano v. Hobart Corp.*, 170 F.3d 264, 271 (2d Cir. 1999) (jury finding that failure to warn constituted negligence). Accordingly, I consider Plaintiff's failure to warn theory as well.
Defendant also lists breach of warranty of merchantability as a claim alleged by Plaintiffs. However, because Plaintiffs do not allege this claim in their complaint or pursue such a claim in their papers, I need not address it.

³ Oral argument on this motion was originally held on May 31, 2006. Pursuant to Federal Rule of Civil Procedure 56(f), I continued oral argument until October 26, 2006, allowing the parties to supplement their papers until October 13, 2006. I also referred Defendant's motion to exclude the testimony of Plaintiffs' expert witness, Peter Schutz ("Schutz"), as well as Plaintiffs' cross-motion for sanctions, to the Magistrate Judge. On September 29, 2006, the Magistrate Judge granted Defendant's motion to exclude the expert's testimony and denied Plaintiffs' cross-motion for sanctions. Plaintiffs thereafter filed additional (if untimely) papers pursuant to Rule 56(f) addressed to the failure to warn issue.

with its principal place of business in Michigan, and is engaged in the business of assembling and distributing finished driver's seats for installation on buses.[4] This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) since Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.[5]

On March 21, 2003, Yaccarino was driving an NYCTA municipal bus, without passengers, to Staten Island, New York. As Yaccarino exited the Staten Island Expressway moving approximately 10 to 15 miles per hour, the bus operator seat malfunctioned, causing the top portion of the seat in which he was sitting to detach from the base at the slide assembly and lean toward the center of the bus.[6] Held in place only by his seatbelt, Plaintiff was able to stop the bus, at which point the seat and Plaintiff fell to the floor. Plaintiff sustained serious injuries to his back as a result of the fall.

---

[4] Plaintiffs allege that Isringhausen manufactured the seat in question while Isringhausen states in its papers that it does not manufacture seats; but instead assembles and distributes seats manufactured by Isringhausen GmbH & Co., KG, a non-party German corporation. However, Isringhausen does not seek summary judgment on this basis.

[5] The parties also agree that New York law applies. "As this accident occurred in New York during the operation of a New York City Transit Authority bus, defendant concedes that New York law should govern because New York has the greatest contacts with the parties and plaintiffs' claims seek to regulate defendants' conduct." Defendant's Memorandum in Support of Motion for Summary Judgment, p. 2 (citing *Santoro ex rel. Santoro v. Donnelly*, 340 F.Supp.2d 464, 484 (S.D.N.Y. Sept. 30, 2004)).

[6] The slide assembly is the mechanism at the base of the seat which allows a bus operator to slide the seat forwards or backwards.

Immediately after the incident, Plaintiff looked at the seat and observed that the tracks at the base of the seat, which were used for adjusting the seat forward and backward, were bent, especially on the left side.[7] Yaccarino then radioed the bus depot, and non-party Kevin Kolonkowski, an NYCTA investigator, reported to the scene and took photographs of the bus operator's seat. Kolonkowski noticed that four bolts used to fasten the driver's seat to its frame were missing. In his incident report, he attributed the fall to the bolts' absence.

The NYCTA replaced the broken seat later that day with a seat that was not manufactured or sold by Isringhausen. The whereabouts of the broken seat at issue are unknown to both parties and neither party has had an opportunity to inspect the seat since the accident. The parties dispute whether the bus operator seat involved in the accident was an Isringhausen seat, and if so which model of Isringhausen seat it was. While Plaintiff argues that the seat was an Isringhausen seat model 6801/517, Defendant argues the seat was either not made by Isringhausen or that it was an Isringhausen seat model 6800/338.[8]

---

[7] Deposition Testimony of Joseph Yaccarino, Exhibit E to Certificate of Defendant's Counsel Robert D. Brown ("Brown Certification"), 105:18-106:5.

[8] As detailed in the Magistrate Judge's Memorandum and Order, evidence of the bus operator seat's brand and model number is conflicting. Plaintiffs produced a copy of a NYCTA's contract dated April 18, 1997 to purchase 120 buses from MCI, which listed three approved driver's seats: the Isringhausen 6801/517, the Recaro b100, and the USSC 9100. NYCTA Contract B31153, revised as of April 18, 1997, Exhibit I to Certificate of Plaintiffs' Counsel Stephen Brenner ("Brenner Certification"). Motor Coach Industries, Inc. ("MCI") sales records relating to the bus Yaccarino was driving at the time of the accident indicate that the bus was delivered on September 30, 1998 to the NYCTA with an Isringhausen

The weight limit for the model 6801/517 is not known, though the maximum weight load tested for that model is 264 pounds according to a test report filed on this motion.[9] The weight limit for the model 6800/338 is 290 pounds.[10] At the time of the incident, Yaccarino weighed 275 pounds. Since the bus involved in the accident was delivered to NYCTA in 1998, NYCTA mechanics performed a number of repairs on the bus operator seat. Maintenance records suggest, and NYCTA witness testimony affirms, that the original seat was replaced in 1999 because it was "broken."[11] During the course of much of this litigation, the photographs Kolonkowski had taken of the bus operator seat involved in Yaccarino's fall could not be found. Plaintiffs' counsel showed witnesses photocopies of photographs taken of a bus operator seat, but none of the witnesses, including

---

bus operator's seat, model 6800/338. MCI Final Vehicle Record, p.5, Exhibit D to Brown Certification. Maintenance records indicate that on November 3, 1999, an NYCTA mechanic removed a seat cushion and sought to replace the seat because it was "broken." NYCTA Maintenance Work Order No. 00923635-1 dated November 3, 1999, Exhibit I to Brown Certification; *see also* Deposition Testimony of Charles Gugliotta, 58-59, 85-88, Exhibit N to Brown Certification (NYCTA witness stating that the broken seat was in fact replaced). On November 15, 2001, another NYCTA mechanic performed repair work on the bus operator seat. According to the Maintenance Work Order, the mechanic "removed lower seat cushion[,] removed actuator assy and retightened lower seat slide-reassembled seat." NYCTA Maintenance Work Order No. 0250115-1 dated November 15, 2001, Exhibit I to Brown Certification.

[9] Test Data Sheet for Isringhausen seat model 6801/517, p. 4, attached to Letter from Plaintiffs' Counsel Stephen Brenner to Judge Sifton, October 25, 2006.

[10] *See* Deposition of Roger Greving, 88:20-89:2, Exhibit G to Brenner Certification (Isringhausen product engineer stating that "we've raised the seat [the weight limit of model 6800/338] to 290 pounds").

[11] *See supra* note 8. Without addressing the evidence cited *supra*, Plaintiffs insist that the original seat was not replaced until Yaccarino's incident on March 21, 2003.

Yaccarino, Kolonkowski, nor Vincent Gambardello (the NYCTA employee who removed the seat after the incident) could confirm that the seat in the photographs was the seat involved in the fall. In May 2005, the NYCTA produced photographs of a bus operator seat that had been found in an envelope with the name of a dispatcher and with a folder bearing Yaccarino's name, but these photographs have not been authenticated as the photographs Kolonkowski took of the damaged seat from which Yaccarino fell, nor have any witnesses identified the brand and model of the seat pictured in the photographs.

Notwithstanding the parties' numerous opportunities to supplement evidence, uncertainty remains about the identity of the broken seat at issue.[12] Since the Magistrate Judge granted Defendant's motion to exclude Plaintiffs' expert testimony on September 29, 2006, Plaintiffs have only submitted evidence concerning the weight load of 264 pounds tested on the Isringhausen seat model 6801/517.

## Discussion

Summary Judgment Standard

Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the

---

[12] In her Memorandum and Order, the Magistrate Judge noted that "[d]espite the Court's frustration with the lengthy history of discovery delays, plaintiffs were granted several additional extensions of time to file their expert disclosure." No. 03-4527, Memorandum and Order, September 29, 2006, p. 9. Although fact discovery closed on June 30, 2005, the Magistrate Court allowed Plaintiffs to submit supplemental expert testimony as late as December 2005.

non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills*, 320 F.3d 110, 117 (2d Cir. 2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.*

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact. Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than "a metaphysical doubt" as to the material facts. *Matsushita*, 475 U.S. at 586; *Harlen Assoc. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001). The non-moving party may not

rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc., v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990). Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).

The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

<u>Plaintiffs' Claims</u>

Plaintiffs allege that Isringhausen is liable for Yaccarino's injury under theories of negligence and strict liability. In a negligence action, a plaintiff must prove "that the manufacturer was responsible for a defect that caused injury, and that the manufacturer could have foreseen the injury." *Maculuso v. Herman Miller, Inc.*, 2005 WL 563169, at *4 (S.D.N.Y. Mar. 10, 2005) (citation omitted). Plaintiffs' failure to warn theory under the negligence count must also meet certain elements. Specifically, "the plaintiff must show that: (1) the defendant manufacturer had a duty to warn; (2) against dangers

resulting from foreseeable uses about which the defendant knew or should have known; and (3) failure to warn was the proximate cause of the harm." *Maculuso,* 2005 WL 563169, at *5 (citations omitted). In a strict products liability action a plaintiff must prove that "(1) the product is 'defective' because it is not reasonably safe as marketed; (2) the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care would not have both discovered the defect and apprehended its danger; (5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care." *Urena v. Biro Mfg. Co.* 114 F.3d 359, 363 (2d Cir. 1997)(citations omitted).

Essential to all these claims is that the plaintiff demonstrate that the product was defective and that the product's defect caused the plaintiff's injury. *Gilks v. Olay Co., Inc.*, 30 F.Supp.2d 438, 443 ("Whether the action is pleaded in strict products liability, breach of warranty, or negligence, plaintiff bears the burden of showing that a defect in the product was a substantial factor in causing the injury.") (quoting *Tardella v. RJR Nabisco, Inc.*, 576 N.Y.S.2d 965, 966 (Sup. Ct. 1991) (internal quotations omitted)). In the present case, Plaintiffs allege that the bus operator seat involved in the incident was an Isringhausen seat model 6801/517, and that the seat was defective because it could not handle Yaccarino's weight and because it did

not have warning labels concerning its weight limit, which is somewhere between 264 and 290 pounds. Relying on expert testimony which has now been excluded, Plaintiffs assert that seats exposed to weights near or at the seat's weight limit will fail, and thus Plaintiffs suggest that Yaccarino's weight of 275 pounds at the time of the incident caused the seat to fall apart.[13] *See, e.g.,* Plaintiffs' Opposition Brief, p. 13-14.

Plaintiffs do not need expert testimony to demonstrate that weight placed on a seat *in excess* of the seat's weight limit could cause that seat to fail. *See, e.g., Lubermens Mutual Casualty Company v. Banco Espanol de Credito, S.A.*, No. 03-5819, 2006 WL 2987694, at *6 (Oct. 13, 2006) ("expert testimony with reference to proximate causation is not always required; rather, a trier of fact can find proximate causation from its consideration of the product and plaintiff's description of how the accident happened")(internal citation omitted); *Buckley v. General Motors Corp.*, No. 98-4366, 2004 WL 725944, at *3 ("Circumstantial evidence, expert testimony, or common knowledge may provide a basis from which the causal sequence may be inferred."); *Ulfik v. Metro-North Commuter R.R.*, 77 F.3d 54, 59-

---

[13] Plaintiffs characterized their argument in this way apparently before they were aware that the maximum weight load tested for the Isringhausen seat model 6801/517 was 264 pounds. Plaintiffs filed the Test Data Sheet indicating the maximum weight load tested for that model on October 25, 2006, one day before oral argument on this motion was scheduled to take place. In filing the Test Data Sheet, I assume that Plaintiffs mean to suggest that the seat failed because Yaccarino, weighing 275 pounds at the relevant time, exceeded the weight limit of the Isringhausen seat model 6801/517, which, according to the Test Data Sheet, may have been at or around 264 pounds.

60 (2d Cir. 1996) (finding that the "trier of fact could reasonably determine, without expert testimony, that prolonged exposure to paint fumes would cause headache, nausea, and dizziness").

Assuming, therefore, that the seat in question was an Isringhausen seat model 6801/517 with a weight limit of 264 pounds, and that Plaintiff Yaccarino's weight at the relevant time was 275 pounds and thus exceeded the seat's weight limit, the question remains as to whether the excess weight caused the incident. According to case law, "if a defendant comes forward with any evidence that the accident was not necessarily attributable to a defect, the plaintiff must then produce direct evidence of a defect," *LaBarge v. Joslyn Clark Controls, Inc.*, No. 03-169S, 2006 WL 2795612, at *7 (W.D.N.Y. Sept. 26, 2006) (quoting *Winckel v. Atlantic Rentals & Sales, Inc.*, 557 N.Y.S.2d 951, 953 (Sup. Ct. 1990)), which "exclude[s] all other possible reasons not attributable to Defendants." *Id.*, at *8; *see also Gilks v. Olay Co.*, 30 F.Supp.2d 438, 443 (S.D.N.Y. Dec. 28, 1998) ("The existence of a defect may be inferred by circumstantial evidence when the product does not perform as intended and plaintiff's proof excludes the possibility of other causes.") Defendant points out that NYCTA investigator Kolonkowski, who inspected the seat soon after the incident occurred, attributed the mishap to four missing bolts which would have fastened the seat to its frame. Plaintiffs do not link the missing bolts to a

defect created by Isringhausen. Additionally, Defendant submitted maintenance records that indicate that the seat in question underwent significant repairs and replacement in 1999 and 2001. The 2001 repairs required removal and reinstallation of the seat slide assembly, which Plaintiffs allege could not withstand the weight placed upon it on March 21, 2003. Defendant has thus demonstrated that the parts in question could have changed substantially since the seat left Defendant's control and that these changes could have caused the incident. Because Plaintiff offers no direct evidence to exclude these plausible, alternative causes of the incident, Plaintiffs claims cannot survive Defendant's motion for summary judgment. *See, e.g., LaBarge*, 2006 WL 2795612, at \*9 (granting summary judgment to defendants where plaintiffs failed to establish defective design and failure to warn claims because defendants brought evidence that the accident was "possibly attributable" to something other than a defect in defendants' product or failure to warn, such as modifications to the product after it left defendant manufacturer's control)[14]; *see also Gilks*, 30 F.Supp.2d at 445 (granting summary judgment in favor of defendant skin cream manufacturer after it presented evidence of other possible causes of the plaintiff's skin condition); *Tiner v. General Motors Corp.*, 909 F.Supp. 112, 118 (N.D.N.Y. Dec. 29, 1995) (granting

---

[14] The *LaBarge* court found this rule applicable where "the allegedly defective product has been lost or destroyed." *Labarge*, 2006 WL 2795612, at \*7.

summary judgment in favor of defendant seat belt manufacturer in case alleging defective design partly because plaintiff did not exclude all other potential causes for seat belt's malfunction and thus concluding that allowing jury to infer product was defective would be improper). Construing the facts in the light most favorable to Plaintiffs, the non-moving party, I conclude that no reasonable juror could return a verdict for Plaintiffs. Accordingly, summary judgment on Plaintiffs' negligence (including failure to warn) and strict liability claims is granted in favor of Defendant.

Because Plaintiffs have not prevailed on the claims underlying Tracy Yaccarino's loss of consortium claim, Tracy Yaccarino's claim must also be dismissed. *See Spinelli v. Secretary of Dept. of Interior*, CV 99-8163, 2006 WL 2990482, at *10 (E.D.N.Y. Oct. 19, 2006) (dismissing loss of consortium claims after having dismissed underlying tort claims); *see also Goldman v. MCL Companies of Chicago, Inc.*, 131 F.Supp.2d 425, 427 (S.D.N.Y. Dec. 26, 2000) ("It is well established that . . . a loss of consortium claim is not an independent cause of action, but is derivative in nature, and may only be maintained where permitted pursuant to the primary tort.") (internal citations and quotations omitted).

## CONCLUSION

For the reasons set forth above, Isringhausen's motion for summary judgment is granted.

The Clerk is directed to transmit a copy of the within to the parties and to the Magistrate Judge.

SO ORDERED.

Dated :   Brooklyn, New York
         November 9, 2006

                              /s/ Charles P. Sifton (electronically signed)
                              United States District Judge